IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN F. HALBLEIB, an adult individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF PITTSBURGH, and NATHAN HARPER, an adult individual,<br><br>Defendants. | ) | C.A. 12-1327 |

**BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Halbleib submits his separate memorandum of points and authorities as follows:

1. **Introduction.** This application is necessitated by virtue of certain unlawful conduct of the Defendants, Nathan Harper (Harper), the Chief of Police of the Defendant City of Pittsburgh (City) and of the City. The unlawful conduct is the imposition of a municipal scheme of economic regulation upon Plaintiff which has been totally preempted by federal statute, and the violation of the Defendant's First Amendment right to engage in commercial speech.

2. **Background Facts Contained in the Complaint.**

Plaintiff operates a towing business, known as "Halbleib Towing". He has done so for more than twenty years. Part of his business is towing damaged motor vehicles from accident scenes,

and in some cases repairing them. Plaintiff's towing business engages in intrastate and interstate commerce. Plaintiff's business predominantly, but not exclusively, operates in the City of Pittsburgh, Allegheny County, Pennsylvania. Plaintiff domiciles his tow trucks in the City of Pittsburgh. He operates or subcontracts more than 30 trucks and has more than 50 employees and independent contractors.

    B.    Defendant City of Pittsburgh, Pennsylvania (the City) is a political subdivision of the Commonwealth of Pennsylvania and Defendant Harper is the Chief of Police of the City of Pittsburgh. Chief Harper is a policy-making official of the City. He is sued herein in his official capacity as the Chief of Police of the City.

    C.    For several years prior to August 2, 2012, Halbleib operated his towing business without material interference by the City. However, following that date and continuing to the present, when Plaintiff's employees arrived at an accident scene to offer their services to tow a vehicle, they have been prevented from doing so by Pittsburgh Police Officers acting under the direct order of Defendant Harper. Chief Harper's order purports to enforce Act 110 of 2012 of the Commonwealth of Pennsylvania, described in detail below.

Plaintiff asserts that the vice of the regulatory scheme involved here is that it denies persons the right to carry goods

for hire in violation of clear a Federal statute and that it violates the Plaintiff's First Amendment right to engage in free speech for commercial purposes.

D.  On July 5, 2012, the general assembly enacted the Towing and Towing Storage Facility Standards Act, P.990, No. 10, 73 P.S. 1971.31 et seq.(hereafter, the "Act" or the "Towing Act") with an effective date of 60 days post enactment: September 4, 2012.

The Act specifically mandates that tow truck operators maintain a physical street address, register the tow truck with the Commonwealth Department of Transportation, display the name, address, and telephone number of the business on the truck and that the operator post the fees for towing and the storage

The Act further provides, with regard to towing from an accident scene:

> (C) Accident.- A tow truck operator shall undertake towing at the scene of a motor vehicle accident only if summoned to the scene by the vehicle owner or vehicle operator, or law enforcement personnel or authorized municipal personnel and is authorized to perform the towing as follows:
>
> (1) The owner or operator of the vehicle being towed shall summon to the scene the tow truck operator of the owner's or operator's choice in consultation with law enforcement or authorized municipal personnel and designate the location where the vehicle is to be towed.
>
> (2) The provisions of paragraph (1) shall not apply when the owner or operator is

> incapacitated, otherwise unable to summon a tow truck operator or defers to law enforcement or authorized municipal personnel.

On August 2, 2012 Chief Harper issued Chief's Order 12-013 setting forth the policy that:

> "Tow truck operators are not permitted to tow any vehicles from any accident scenes if they have not been summoned by the owner or operator of the vehicle The practice of tow truck drivers showing up at accident scenes and engaging in conversation with victims involved in accidents will not be permitted. Officers will inform tow truck operators who arrive at the scene of an accident that they have to leave or be cited for Vehicle Code 3545 or arrested for interfering with a police investigation."

The Towing Act provides no criminal penalty for violating its provisions. A tow truck operator who violates the Act violates the Commonwealth's Unfair Trade Practices and Consumer Protection Law[1], which provides civil, and equitable, but not criminal remedies. Moreover, even the civil remedies are personal to the affected consumer and they are not within the jurisdiction or authority of the Chief Harper, the City of Pittsburgh or the Pittsburgh Police Department.

The Motor Carrier Act at 49 U.S.C. §14501 provides:

> (c) Motor carriers of property. --
>
> (1) General rule.-Except as provided in paragraphs (2) and (3), a State, political subdivision of State, may not enact or enforce a law, regulation, or other provision having the force and effect of law related to

---

[1] Act of December 17, 1968 (P.L. 1224, No. 387),1, 73 P.S. § 201-1 et seq.

> a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
>
> (2) Matters not covered.-Paragraph (1)--
>
> > (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; . . .
> >
> > (C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C.A. § 14501(c)(1)

The Federal regulation preempts **any** state or local legislation on the issue, including the provisions of the Act and Chief's Order 12-013.

### 3. History of Federal Preemption of the Motor Carrier Business.

Effective January 1, 1995, Congress enacted the Federal Aviation Administration Authorization Act. (FAAA Act). In pertinent part, that Act (now re-codified as 49 U.S.C. §14501(c)(1) declares: "A State, political subdivision of a State, or political authority of two or more States *may not enact*

*or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route or service of any *motor carrier* . . . with respect to the transportation of property." The FAAA Act was and is broadly understood to obliterate State and municipal regulation of entry into the business of transporting property for hire by motor vehicle. "Congress' clear purpose in 14501(c)(2)(A) is to ensure [ ] its preemption of States' **economic** authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety." (emphasis added). *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439, 122 S. Ct. 2226, 2236, 153 L. Ed. 2d 430 (2002).

The pertinent language of the FAAA Act was based upon identical language contained in the Airline Deregulation Act of 1978 (hereinafter, the "ADA"), enacted nearly two decades earlier. The Act has since been re-codified, in material part, as 49 U.S.C. §41713. That section declares: "A State, political subdivision of a State, or political authority of two or more States *may not enact or enforce* a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier..."

Reacting to the entreaties of various States, the 104th Congress "gave back" some power to the States to regulate certain issues. See 49 U.S.C. §14501(c)(2)(c). One of those is the

power of the States to regulate the *price* of non-consensual tow truck operations, e.g. illegally parked vehicles.

> "[This section 14501 shall not apply] to the authority of a State (or subdivision thereof) to enact a law, regulation or other provision relating to *the price* of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the vehicle."

4. **Pertinent Authorities.**

A. **United States Supreme Court Authorities.** As noted above, in 1978, Congress enacted the Airline Deregulation Act of 1978. That Act, now contained in 49 U.S.C. §41717 the following language: "A State . . . *may not enact or enforce* a law, regulation or other provision having the force and effect of law related to a *price, route or service* of an air carrier." The Supreme Court has definitively construed the relevant language "[a] law, regulation, or other provision . . . related to a price, route, or service" in *Morales v. Trans World Airlines*, 504 U.S. 374 (1992) as preempting state laws having connection with or in reference to carrier rates, routes, or services, notwithstanding the fact that they do not directly regulate them. (*Morales*, dealt specifically with state consumer protections laws.) In *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364(2008), the Court held that the FAAA preempted state requirements that tobacco shippers utilize a delivery service providing verification of the buyer's legal age and imposing upon the

carrier constructive knowledge that packages originating from specified types of senders contained tobacco.

*City of Columbus, supra*, 536 U.S. 424, which deals specifically with towing regulations, held that municipal safety regulations were not preempted by the FAAA. However, the Court stated, "We reiterate that § 14501(c)(2)(A) shields from preemption only "safety regulatory authority" (and "authority of a State to regulate . . . with regard to minimum amounts of financial responsibility relating to insurance requirements"). Local regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from 14501(c)(1)'s preemption rule." Id. at 442.

**Third Circuit and Pennsylvania Authorities**

The Third circuit has never addressed this issue. The only federal authority in the Commonwealth is an unreported case from the Eastern District, *Helmrich Transp. Systems, Inc. v. City of Philadelphia*, 2004 WL 2278534 (E.D. Pa. 2004), holding that portions of a city ordinance fixing permissible towing rates were preempted by the FAAA.

The foregoing unavoidably demonstrates the following: Neither States nor municipalities may regulate any aspect of the business of transporting property for hire, *except*: States and municipalities may regulate safety matters related to the motor vehicles themselves, operational limitations based upon size and

weight concerns, insurance, and both States and municipalities may regulate the maximum charges for non-consensual tow truck service. That is all.

Here by controlling who may engage in the towing business at an accident scene Defendants are controlling and regulating who may offer tow services and the price by relegating to themselves either total or de facto control of who may engage in the business of towing cars from accident scenes. Under the existing regulation imposed by the Defendants, neither the Plaintiff, nor any similarly situated tow operator, can appear at a scene and offer their service to tow a vehicle or to offer to do so for a lower fee than the company selected by the police or to offer better, more or different services than the company selected by the police. The Defendants have effectively created a monopoly for a towing company that they favor by stifling or limiting competition in the market.

The regulatory scheme imposed upon Plaintiff by the defendants herein in comprehensively pre-empted by the FAAA, particularly, 49 U.S.C. §14501(c).

5.   **The City's Policy is pre-empted by Federal Statute and constitutes a prior restraint on Free Speech.**

The Chief's order, which represents the official policy of the City, clearly seeks to regulate the towing business by preventing the Plaintiff from towing a vehicle unless he is

summoned to the scene by the owner or by the police. Merely by appearing at the scene and asking an operator if he or she would like his or her vehicle towed, he will be subject to arrest. Moreover, the Chief's Order and the Act allow only the police to solicit an operator on behalf of a towing company, or, in cases in which the owner cannot or will not make a choice to select the person who will tow a vehicle. In other words, as stated above, only police have either substantial or total control over who may conduct business at an accident scene. The result is that the City has virtually complete control of the towing business in the City the Police because they will select the company that tows and that Company will determine the rate for the tow and storage.

**Prior restraint on Free Speech in Violation of the First Amendment of the United Stated Constitution and Pennsylvania Constitution, Article I, Section 7.**

The commercial speech pertaining to towing rates and storage fees is substantially controlled by the City and City police under Order 12-013 because Plaintiff, nor any similarly situated tow operator cannot appear at a scene and offer to tow a vehicle for less than the company selected by the police or to offer better, more or different services than the company selected by the police.

Commercial speech is protected generally under the First Amendment and specifically, the Supreme Court has held that personal solicitation of potential customers is commercial speech

that is protected by the First Amendment. *Edenfield v. Fane*, 507 U.S. 761(1993).

The government may only limit false, deceptive or misleading commercial speech. *Ibanez v. Florida Department of Business and Professional Regulations*, 512 U.S. 136 (1994).

The restriction of free speech must be tailored so as not to trammel on truthful speech. In *Edenfield*, the Supreme Court considered a wholesale ban on Certified Public Accountants solicitation of clients. "To determine whether personal solicitation by CPA's may be proscribed under the test set forth in *Central Hudson* we must ask whether the State's interests in proscribing it are substantial, whether the challenged regulation advances these interests in a direct and material way, and whether the extent of the restriction on protected speech is in reasonable proportion to the interests served. See [*Central Hudson Gas & Electric Corp.*, 447 U.S. 557 at 564, 106 S.Ct. 2343, at 2689], *Edenfield v. Fane*, 507 U.S. at 767, 113 S.Ct. at 1798.

The Court held that under the First Amendment, the state must impose the least restrictive means of achieving its objective. "But where, as with the blanket ban involved here, truthful and nonmisleading expression will be snared along with fraudulent or deceptive commercial speech, the State must satisfy the remainder of the *Central Hudson* test by demonstrating that its restriction serves a substantial state interest and is designed in a

reasonable way to accomplish that end." *Edenfield v. Fane,* 507 U.S. 761, 768-769, 113 S.Ct. 1792, 1799 (U.S.Fla.,1993)

**Pendent State Law Claim**

Moreover Article I, Section 7 of the Pennsylvania Constitution prohibits the prior restraint of free speech, including commercial speech. "Pennsylvania Constitution, Article I, Section 7, will not allow the prior restraint or other restriction of commercial speech by any governmental agency where the legitimate, important interests of government may be accomplished practicably in another, less intrusive manner. *Insurance Adjustment Bureau v. Insurance Com'r for Com. of Pa.* 542 A.2d 1317 at 1324 (Pa.,1988).

In Insurance Adjustment Bureau, the Supreme Court considered whether a twenty-four ban on public adjusters approaching homeowners who have suffered loss from a fire or other catastrophe constituted a prior restraint on commercial speech, and held that it was. In it's rationale, the Supreme Court observed:

> " As a threshhold matter, commercial speech deserving of constitutional protection must "concern lawful activity and not be misleading." The Commonwealth expresses the concern in this case that the speech at issue is misleading and that it may be used to perpetrate a fraud, particularly if it occurs immediately after a disaster, when the property owner may be vulnerable to overreaching. That some public adjusters and public adjuster solicitors may mislead potential customers does not, of course, establish that all persons in the public adjusting business commit

> fraud. In fact, in the absence of evidence that the overwhelming volume of public adjusting activity in Pennsylvania is based on misleading speech, we will treat public adjusting as a lawful business activity, just as we would any other business activity, which may be subject to abuse by a few individuals."
>
> Insurance Adjustment Bureau, 542 A.2d at 1322.

(Internal quote omitted.)

Similar to the analysis under the Federal First Amendment Right, here, tow operators are licensed and if they engaged in conduct violative of the Act, such as not maintaining licensure, or misleading the public as to their fees or services, then their conduct could be addressed without impinging on commercial speech.

In this case, the City and Chief Harper seek not just to punish or stop false or misleading speech, but to totally ban any speech by Plaintiff tow operator to an individual in need of such services. In other words, the Order is patently a prior restraint of Plaintiff's protected commercial speech.

This restraint is solely content based and constitutes a wholesale gag of speech by all towing services. Because there are less intrusive methods than an all encompassing speech ban available to effect the governmental objective of preventing fly-by-night or unlicensed towers from preying on persons who have had a vehicular failure or collision, the policy must be enjoined.

**8. The Preliminary Injunction Standard**

For an injunction to be issued the Plaintiff must meet the a four part test which requires a court to determine, "(1) the significance of the threat of irreparable harm to plaintiff if the injunction is not granted;(2) the state of the balance between this harm and the injury that granting the injunction would inflict on defendant;(3) the probability that plaintiff will succeed on the merits; and(4) the public interest. 11A Fed. Prac. & Proc. Civ. §2948 (2d ed.), *P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir.2005).

**a. Irreparable Harm**

As to the First Amendment claim, Loss of First Amendment freedoms, for even minimal periods of time constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). As to the parties claim under the FAAA, the harm is that it will be difficult or impossible for the Plaintiff's to ascertain the extent of their loss because he cannot know what business he lost as the result of the Defendant's preventing him from even appearing at accident scene to obtain towing business. Additional grounds for finding irreparable harm are "loss of trade, and loss of good will" resulting from the Plaintiff being barred from participating in the accident towing and repair business. *Kos Pharmaceuticals,*

*Inc. v. Andrx Corporation*, 369 F.3d 700, 726 (3d Cir.2004) (internal quotation marks omitted)." *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 11-CV-01665, 2012 WL 1080144 (E.D. Pa. Mar. 30, 2012)

b. **Balancing Harm**

The harm to the Plaintiff is obvious. However, there is no harm to the Defendants who will not incur any financial penalty. The statute upon which the Chief purports to base his order is not one that he has a duty or even standing to enforce because, as stated above, the enforcement of the Towing Act is by a civil action brought by the vehicle owner pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

**c. Probability of Success on the Merits**

For the reasons stated above their is a high probablity that the Plaintiffs will succeed on the merits.

**d. The Public Interest**

The public interest in this matter has been established by Congress which allows all motor carriers to compete without state regulation of price, route or service. As to Plaintiff's First Amendment claim, enforcement of a Constitutional Right is always in the public interest.

**Conclusion**

For the reasons stated herein, the Plaintiff requests that the Court enter a preliminary injunction barring the Defendants

from preventing Plaintiff from appearing at motor vehicle accident scenes and soliciting owners or operators of those vehicles, unless they are incapacitated, for towing and repairing damaged vehicles business.

BACHARACH AND MICHEL

John A. Bacharach, Esq.
Pa. ID #19665
564 Forbes Avenue
1113 Manor Complex
Pittsburgh, PA  15219
412-391-8713


CAPUTO & CAPUTO

/s/Louis Caputo
Louis Caputo, Esq.
Pa. ID #
The Buhl Bldg., 5th Floor
204 Fifth Avenue
Pittsburgh, PA  15222
412-690-0300